**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **DENISON CUSTOM HOMES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-03-24** |
| | § | |
| **ASSURANCE COMPANY OF** | § | |
| **AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court is Defendant Assurance Company of America's ("Assurance") First Amended Motion for Summary Judgment (Dkt. #61). The Court, after reviewing the motion, the responses of the parties and the relevant law, is of the opinion that the motion should be GRANTED.

### Factual and Procedural Background

Plaintiff Denison Custom Homes ("Denison") is a homebuilder. Assurance and Intervenor Southern Vanguard ("Southern Vanguard") are both insurance companies. Denison built a house at 125 Tradewind Drive in Victoria, Texas (hereinafter the "house"), which Fleming and Wanda Chiles (the "Chileses") purchased in October, 2000. A few months after they moved in, the Chileses noticed cracks in the walls and in the shower and they retained an engineer to investigate the source of the problem. The Chileses' engineer reported that the soils under the master bathroom had turned to mud, causing the foundation to sink. In January, 2001, the Chileses notified Denison that there was extensive shifting of the foundation and resulting damage to the house. On March 6, 2001, the Chileses sent a letter to Denison demanding repairs under the Residential Construction Liability Act (the "RCLA"). TEX. PROP. CODE § 27.004(a). Thereafter, Denison notified Joe Pratt Insurance

1

Agency ("Joe Pratt") of the Chileses' complaints (hereinafter referred to as the "underlying claim"). Joe Pratt is an insurance broker that sold Denison policies with Assurance and Southern Vanguard. Joe Pratt, in turn, notified Assurance on an ACORD notice form of the underlying claim.

Assurance hired an independent adjuster, John Barron, to investigate the underlying claim. Mr. Barron and a structural engineer examined the home and concluded that the home was settling as a result of plumbing problems, but there was no resulting structural damage. Mr. Barron recommended repairing the leak and performing some cosmetic repairs.

On April 12, 2001, Denison's counsel, Duane Crocker ("Crocker") of the Anderson Smith Null & Stofer firm, contacted Assurance's claim handler, LaCurtis Sumlin ("Sumlin"), to inquire about policy coverage and to remind Assurance that the deadline for the RCLA "offer of settlement" provision would expire on April 22, 2001. That same day, Sumlin responded to Crocker that coverage was undetermined at the moment, that Assurance was looking for the policy, and that a reservation of rights letter would be issued once Assurance reviewed the policy.

On April 20, 2001, after reviewing the engineering report of John Barron, Assurance and Denison each made timely RCLA settlement offers to the Chileses. Assurance offered $5,818.50 for repairs to the house. Crocker, on behalf of Denison, made an offer of $5,818.50 for repairs to the house caused by the ground swell under the master bathroom, as well as additional cosmetic repairs to the house. Neither Assurance nor Denison made any offer relating to temporary housing costs, the reduction of the fair market value of the home, engineering and consulting fees, or attorneys fees included in the Chileses' RCLA demand letter.

In a letter of May 1, 2001, the Chileses rejected Denison's offer on the grounds that "the premise upon which [the offer] is based is incorrect, because the subsurface remedial work will not fix any real problem, and because the engineer's report and the test data reflect that there is a more

serious problem with the foundation that your offer does not address."[1] Consequently, the Chileses filed suit against Denison on June 6, 2001.  On June 26, 2001, Crocker sent Assurance a letter explaining that it was Denison's understanding that Assurance would provide a defense and legal representation would be retained by Assurance.  Crocker, on Denison's behalf, filed an answer to the Chileses' lawsuit (hereinafter the "Chiles litigation") on July 2, 2001.  That same day, Assurance retained Rick Fancher ("Fancher") to represent Denison.  Sumlin advised Denison that Assurance would handle the defense under a reservation of rights.

After an extensive search, Assurance concluded that it had not issued a General Liability Policy to Denison.  Assurance was only able to locate a Builder's Risk Policy issued to Denison, which did not include liability coverage that would entail a duty to defend.  On October 1, 2001, Assurance notified Joe Pratt that it should refer defense of the Chiles litigation to Denison's general liability carrier, Southern Vanguard.  On October 9, 2001, Assurance contacted Southern Vanguard directly to let it know that Assurance intended to withdraw its defense.  On November 29, 2001, Sumlin instructed Fancher to put off any further negotiations with the Chileses due to the fact that Assurance would be withdrawing its defense. On December 6, 2001, Southern Vanguard issued a reservation of rights letter to Denison.  On January 17, 2002, Assurance formally withdrew and Southern Vanguard formally assumed Denison's defense subject to its reservation of rights letter. Southern Vanguard employed Fancher to continue Denison's defense.

On April 29, 2002, the Chiles litigation was settled for $95,000.  Denison funded $16,000, Southern Vanguard funded $40,000, with the rest being funded by others parties to the Chiles litigation.  The present lawsuit was filed by Denison against Assurance in Texas state court on

---

[1] Defendant's First Amended Motion for Summary Judgment, Exhibit S, *letter from Robert Houston to Duane Crocker*.

January 6, 2003, alleging breach of contract and violations of TEX. INS. CODE art. 21.21 ("Article 21.21"). Denison claimed that Assurance improperly withdrew its defense in the Chiles litigation without sending Denison a reservation of rights letter. Denison sought recovery of the $16,000 it contributed to the Chiles settlement, interest and attorneys' fees, and additional damages under Article 21.21. Southern Vanguard intervened seeking indemnity for the $40,000 it had paid on behalf of Denison under the Chiles settlement agreement. Assurance then removed the case to federal court on February 27, 2003.

On February 25, 2005, the Court granted Denison leave to amend its original complaint.[2] Denison's First Amended Complaint[3] alleges: (1) breach of contract; (2) violations of Article 21.21, unfair claim settlement practices; (3) violations of TEX. INS. CODE art. 21.55, the prompt payment statute; (4) violations of the Texas Deceptive Trade Practices–Consumer Protection Act (the "DTPA"); (5) common law negligent misrepresentation; (6) common law estoppel; and (7) attorneys' fees, costs, and damages under the Texas Insurance Code and the DTPA. On September 29, 2005, Assurance filed the motion currently before the Court seeking summary judgment on all of these claims. Both Denison and Southern Vanguard have responded to the motion.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely

---

[2] Order Granting Leave to Amend, Dkt. #42.

[3] Denison's First Amended Complaint, Dkt. #43.

4

point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).  "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).  However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## Analysis

In response to Assurance's motion for summary judgment, Denison and Southern Vanguard essentially assert that Assurance has waived the right to deny, or should be estopped from denying, liability coverage because it assumed defense of the Chiles litigation without issuing a reservation of rights letter and by so doing violated provisions of the Texas Insurance Code and DTPA.  Three

central issues control the disposition of all of Denison's claims on summary judgment: (1) whether Denison can maintain an action for breach of contract if it cannot prove the terms of the insurance contract; (2) whether Assurance has waived the right to deny, or can be estopped from denying, liability coverage after assuming defense of the Chiles litigation for 10 months without a reservation of rights letter; and (3) whether Denison and Southern Vanguard have offered material facts suggesting that they suffered any harm as a result of Assurance's withdrawal.   The Court will consider each of these issues separately.

A.      *Breach of Contract*

        In their responses to Assurance's motion for summary judgment, Denison and Southern Vanguard claim that there is a fact issue as to whether Denison's policy with Assurance included liability coverage that would entail a duty to defend.  Denison contends that "because a true and correct copy of the policy has not been found, a fact question exists as to what coverage is afforded under the actual policy."[4]  Conversely, Assurance contends that under Texas law, "Denison must either provide the [policy] or, if the [policy] is missing, prove the specific terms of the missing contract."[5] To support this proposition, Assurance cites to *Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 975 F.2d 1130 (5th Cir. 1992), in which the Fifth Circuit held that "[t]he well-settled rule in Texas mandates that an insured must prove the terms of the insurance contract between the parties in order to establish coverage under the policy." *Id.* at 1132.

        Assurance contends that the Builder's Risk Policy issued to Denison does "not require

_____

        [4] Denison's Amended Response and Memorandum in Opposition to Defendant's Amended Motion for Summary Judgment, Dkt. #62, p.4.

        [5] Defendant's Reply to Plaintiff's and Intervenor's Responses to Its First Amended Motion for Summary Judgment, Dkt. #65, p.2.

Assurance to defend Denison against any third-party lawsuit."[6] As evidence of the Policy terms, Assurance offers Policy Number BR 94737542, which it claims is the Builder's Risk Policy issued to Denison by Assurance and maintained in the records of Joe Pratt. Denison contends that Policy Number BR 94737542 was issued to a predecessor company prior to the formation of Denison Custom Homes and is not the Policy under which Denison filed its claim relating to the Chiles litigation. Denison President Matt Lively ("Lively") testified that Policy Number BR 94737542 is a different policy number than the policy issued to Denison. Lively also testified that, when the policy was purchased, Denison was never provided with a copy by Assurance or Joe Pratt. Consequently, Denison cannot provide a copy of the policy it claims to have purchased nor can it offer evidence of the terms of the policy. Denison simply contends that the Builder's Risk Policy offered into evidence by Assurance is not the correct policy.

In order to prevail on their breach of contract and indemnity claims, Denison and Southern Vanguard must prove the terms of the policy they claim Assurance breached. *See*, *Ranger County Mut. Ins. Co. v. Chrysler Credit Corp.*, 501 S.W.2d 295, 298 (Tex. 1973); *Dairyland County Mut. Ins. Co. of Tex. v. Martinez*, 484 S.W.2d 785, 788 (Tex. Civ. App.—El Paso 1972, writ ref'd n.r.e.). In the absence of any evidence that the policy issued to Denison included general liability coverage that would entail a duty to defend, Denison and, derivatively, Southern Vanguard, cannot maintain an action for breach of contract against Assurance. Therefore, the Court finds that Denison and Southern Vanguard cannot claim that the policy issued to Denison by Assurance included general liability coverage that would entail a duty to defend because in order to assert the existence of such coverage, Denison must provide the policy or prove the actual terms of the policy through secondary evidence admissible under Federal Rule of Evidence 1004. *See Ranger County Mut. Ins. Co. v.*

---

[6] Defendant's First Amended Motion for Summary Judgment, Dkt. #61, p.7.

*Chrysler Credit Corp.*, 501 S.W.2d 295, 298 (Tex. 1973); *Hartford Accident & Indemnity Co. v. Parrott*, 486 S.W.2d 405, 407 (Tex. Civ. App.—Beaumont 1972, no writ).

B.     *Waiver and Estoppel under the* Wilkinson *Exception*

Denison and Southern Vanguard argue that, regardless of the actual terms of the policy issued to Denison by Assurance, their breach of contract claim survives because Assurance has waived the right to deny, or should be estopped from denying, a duty to defend under the policy because Assurance assumed the defense of the Chiles litigation for ten months and never issued a reservation of rights. Assurance objects to the creation of liability under the policy in equity on the grounds that "Texas law has long established that the doctrines of waiver and estoppel cannot be used to create insurance coverage where none exists under the terms of the policy."[7] *See Washington Nat'l Ins. Co. v. Craddock*, 109 S.W.2d 165, 166-67 (Tex. 1937). Assurance cites to *Texas Farmers Insurance Co. v. McGuire*, 744 S.W.2d 601 (Tex. 1988), where the Texas Supreme Court held,

> Waiver and Estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy.

*McGuire*, 744 S.W.2d at 603. Denison and Southern Vanguard do not dispute that this general rule is the law in Texas.

However, the Texas Supreme Court carefully qualified the holding in *McGuire* with a footnote that acknowledges,

> [a] court of appeals has held that there is an exception to this general rule. If an insurer, with knowledge of facts indicating noncoverage, assumes or continues the defense of its insured without obtaining a non-waiver agreement or a reservation of rights, it waives all policy defenses, including those of noncoverage, or it may be estopped from raising them.

---

[7] Defendant's First Amended Motion for Summary Judgment, Dkt. #61, p.10.

*Id.* at 603 n.1 (citing *Farmers Texas County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.).  Denison and Southern Vanguard contend that this exception articulated in *Wilkinson* (the "*Wilkinson* exception") applies to this case because Assurance provided a defense under the policy without issuing a reservation of rights.  Assurance distinguishes *Wilkinson* and other cases applying the *Wilkinson* exception as dealing exclusively with general liability policies that include a  duty to defend, but contain exclusions giving rise to a noncoverage defense. *See Wilkinson*, 601 S.W.2d at 521-22; *See also Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 480-81 (5th Cir. 1992) (applying the *Wilkinson* exception to a personal injury liability policy).  Assurance contends that the *Wilkinson* exception cannot be applied to a builder's risk policy which does not contain a duty to defend because such an application would fly in the face of the general rule against creating insurance coverage in equity articulated by the Texas Supreme Court.  Denison and Southern Vanguard argue in response that no court has limited application of the *Wilkinson* exception to general liability policies and the absence of cases dealing with builder's risk policies simply reflects the fact that insurers do not make the mistake of assuming a defense under a builder's risk policy.  Both of the observations made by Denison and Southern Vanguard are correct.  However, in this case it appears that an insurer *did* make the mistake of assuming a defense under a builder's risk policy, therefore, the Court must determine whether the *Wilkinson* exception can apply to such a situation.

The *Wilkinson* court explained that the exception to the prohibition against the application of waiver or estoppel "is based on the ' . . . apparent conflict of interest than might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage.'" *Wilkinson*, 601 S.W.2d at 522 (quoting *Pacific Indem. Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169 (5th Cir. 1973)).  *Wilkinson* relies upon the

Fifth Circuit's formulation of this exception in *Pacific Indemnity Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169 (5th Cir. 1973). *Pacific Indemnity* states the exception in the same terms used in *Wilkinson* and cites to two Texas Appellate Court opinions from the 1930's. The first, *Ferris v. Southern Underwriters*, 109 S.W.2d 223 (Tex. Civ. App.—Austin, 1937, writ ref'd), dealt with an automobile insurance policy. The estate of George Ferris, who was struck and killed by the insured, sued Southern Underwriters for the judgment found against the insured in a civil action defended by Southern Underwriters. The Court of Civil Appeals held,

> [t]he rule is settled in this state that "a defense by the insurer, in an action on the policy, that a certain claimed liability is not within the policy terms, is waived when it assumes absolute control, under the terms of the contract with the insured, of the action brought against the insured to recover damages."

*Ferris*, 109 S.W.2d at 226 (quoting *American Indem. Co. v. Fellbaum*, 225 S.W. 873, 874 (Tex. Civ. App.—San Antonio, 1920, *affirmed* in 114 Tex. 127)). Similarly, in the second case cited by *Pacific Indemnity*, *Automobile Underwriters' Insurance Co. v. Murrah*, 40 S.W.2d 233 (Tex. Civ. App.—Dallas, 1931), the Court of Civil Appeals held that when an insurer

> . . . with full knowledge of the issues to be tried in the suit against [the insured], took exclusive control and management of [the insured's] defense in such suit, introduced all of the evidence that was before the court on such defense, filed all of the pleadings that were filed for [the insured], examined and cross-examined all witnesses, it thereby waived the defensive clauses in the policy of insurance and admitted an unconditional indebtedness . . . .

*Murrah*, 40 S.W.2d at 235.

Both of these cases state a similar waiver rule that embodies the principle upon which the *Wilkinson* exception is founded. Significantly, neither *Ferris* nor *Murrah* address the general rule against creating new insurance coverage in equity. And the general rule had been adopted with full vigor in Texas courts at the time the Court of Civil Appeals articulated the waiver rule in *Ferris* and *Murrah*. In *Washington Nat. Ins. Co. v. Craddock*, 109 S.W.2d 165 (Tex. 1937), which was cited

10

both in *Wilkinson* and in *Pacific Indemnity*, the Texas Supreme Court adopted an opinion of the Michigan Supreme Court holding that estoppel or waiver can only be used to bind an insurer where the insurer "'[has] relied on a forfeiture of the contract'" induced by its own conduct and cannot be used to expand the insurance contract to "'create a liability not created by the contract.'" *Craddock*, 109 S.W.2d at 254 (quoting *Ruddock v. Detroit Life Ins. Co.*, 177 N.W. 242, 248 (Mich. 1920). Just as *Ferris* and *Murrah* do not address the general rule against creating coverage in equity, neither *Craddock* nor *Ruddock* address the situation of a defense willingly assumed and then rejected by an insurer. The clear implication is that these cases did not contemplate their interdependence.[8] That is, the rule established in *Ferris* identifying the willing assumption of an insured's defense in litigation as waiver of a policy defense of noncoverage was independent of the rule articulated in *Craddock*.

Cases contemporary to *Ferris* and *Craddock* and treatment of the waiver rule in secondary sources indicate that the *Wilkinson* exception did not follow from the general rule, but stated a separate principle that developed independently. *See e.g., American Indemnity Co. v. Fellbaum*, 263 S.W. 908 (Tex. 1924); *Montgomery v. Utilities Ins. Co.*, 117 S.W.2d 486 (Tex. Civ. App.—Beaumont, 1938); *see also* 38 A.L.R.2d 1148; 37 A.L.R. 633; 11 AM. & ENG. ENC. LAW (2d Ed.) p. 13; 4 JOYCE ON INSURANCE (2d Ed.) § 2800, pp. 4812-13. The Court finds, therefore, that the scope of the *Wilkinson* exception is not defined in any part by the general rule articulated in *McGuire* and *Craddock*. Assurance was incorrect to assert that application of the *Wilkinson* exception to this case would defy the Texas Supreme Court's holding in *McGuire*. To the extent

---

[8] In *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542 (Tex. Civ. App.—Dallas 1990), a Texas Court of Civil Appeals observed that, "[w]e have found no case, nor has either party cited a case, in which the general rule was applied where there was an assumption of the insured's defense by an insurer." *Williams*, 791 S.W.2d at 551 (comparing 1 A.L.R.3d 1139 (application of general rule) with 38 A.L.R.2d 1148 (application of exception)).

that *McGuire* refuses to address the specific holding in *Wilkinson*, it can hardly be said that such vague dicta calls into question a principle of insurance law applied in Texas courts without interruption since the 1920's.  The statement in *Wilkinson* that the rule applying waiver and estoppel to situations where an insurer has willingly assumed the defense of its insured somehow "follows from" the general prohibition against the creation of insurance coverage in equity, to the extent that it suggests that the former is limited by the latter, is simply inaccurate. *Wilkinson*, 601 S.W.2d at 521.

Assurance does not dispute that Denison and Southern Vanguard seek to invoke the doctrines of waiver and estoppel to hold Assurance liable for willingly providing and subsequently withdrawing a defense in litigation.  Therefore, the Court finds that the principle articulated in *Wilkinson*, *Fellbaum*, *Ferris*, and *Murrah* is controlling.  The Court is of the opinion that the availability of the doctrines of waiver and estoppel to bind an insurer under Texas law is accurately articulated in the following terms: The doctrines of waiver and estoppel cannot operate to change, re-write, or enlarge the risks covered by an insurance policy unless (1) the doctrines are applied to avoid conditions that would cause a forfeiture under the policy, or (2) an insurer assumes the insured's defense without giving the insured proper notice that it has retained its right to raise a defense of noncoverage, or (3) the insurer has acted in bad faith or fraudulently.

However, the Court believes that Assurance was correct to distinguish between situations in which a defense is provided under a policy providing a duty to defend but excluding the particular underlying claim, and situations, such as the one at bar, in which a defense is provided under a policy that contains no duty to defend at all.  This distinction compels the Court to address the fundamental differences between the doctrines of waiver and estoppel.  Texas courts applying the *Wilkinson* exception have acknowledged that, although "courts often use the terms estoppel and

waiver interchangeably . . . . the doctrines of estoppel and waiver are two distinct doctrines." *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 552 (Tex. Civ. App.—Dallas, 1990).  Waiver requires the voluntary surrender of a known right. *See Utilities Ins. Co. v. Montgomery*, 138 S.W.2d 1062, 1064 (Tex. Comm'n App. 1940, opinion adopted); 46 C.J.S. INSURANCE § 786.[9]  Estoppel requires a showing that the insured was prejudiced by the conduct of the insurer. *See Employers Casualty Co. v. Tilley*, 496 S.W.2d 552, 560 (Tex. 1973).  Whereas waiver is premised upon a defense available under the policy, estoppel is premised upon the prejudice caused to the insured. Applied to the case at bar, the Court finds that an insurer cannot "be said to have waived nonexisting portions of an insurance policy." *Kloidt v. Metropolitan Life Ins. Co.*, 16 A.2d 274 (N.J. 1939) (holding that "a waiver implies the existence of some provision or condition of the contract which the party alleged to have made the waiver does not insist upon the performance." *Id.* at 672). Assurance cannot waive a defense that does not exist under the policy.  Because Denison has failed to prove the existence of any policy provision entailing a duty to defend, the Court cannot consider whether Assurance waived a defense of noncoverage under the policy.  The policy presented by Assurance, which the Court must accept in the absence of controverting evidence, contains no duty to defend and consequently contains no exclusions to coverage which could be waived.  Therefore, the Court finds that Denison and Southern Vanguard are unable to invoke the doctrine of waiver to

---

[9] *See Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741 (Tex. Civ. App.—El Paso 2000, no pet.):

> A waiver is an intentional release, relinquishment, or surrender of a known right. *Massachusetts Bonding and Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396, 401 (Tex.1967); *Purvis Oil*, 890 S.W.2d at 937. In order to establish a waiver of rights under a contract, there must be proof of an intent to relinquish a known right. *Huffington v. Upchurch*, 532 S.W.2d 576, 580 (Tex.1976); *Purvis Oil*, 890 S.W.2d at 937.

*Id.* at 749.

the facts at bar.

Conversely, application of the doctrine of estoppel does not rely on the terms of the policy.

> The purpose of estoppel is to prevent inconsistency and fraud resulting in injustice, but estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant. Estoppel is a doctrine for the prevention of injustice, and is for the protection of those who have been misled by that which on its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny; but one entitled to the protection of the doctrine must have been misled.

31 C.J.S. ESTOPPEL & WAIVER § 2.  Thus, the absence of a duty to defend within the insurance policy does not prevent Denison or Southern Vanguard from invoking the doctrine of estoppel.

Because the Court is presented with the novel situation where only estoppel is available, it must consider which elements of the *Wilkinson* exception exclusively comprise an estoppel defense. The *Wilkinson* exception by its own terms merges the doctrines of waiver and estoppel.  In order to determine where the influence of one doctrine ends and the other begins, the Court will overlay the elements of estoppel onto the elements of the *Wilkinson* exception and carefully trace where the lines correspond.

The *Wilkinson* exception is comprised of three elements.  Texas cases have applied the *Wilkinson* exception where an insured has shown: "(1) that the insurer had sufficient knowledge of the facts or circumstances indicating non-coverage but (2) assumed or continued to defend its insured without obtaining an effective reservation of rights or non-waiver agreement and, as a result (3) the insured suffered some type of harm." *Penn. Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways*, Inc., 964 F.2d 478, 481 (5th Cir. 1992).  The doctrine of estoppel generally requires a showing that the party invoking estoppel reasonably and justifiably relied upon some act or omission of the party to be estopped and was thereby prejudiced.  The Court finds that the second and third elements of the *Wilkinson* exception reflect the elements of estoppel.  With regard to the second element,

"Assumed or continued to defend its insured" is the act upon which the insured relied, and the absence of a "reservation of rights or non-waiver agreement" establishes that the insured's reliance was reasonable and justifiable. The third element reflects the requirement of prejudice and will be discussed in greater detail in the next section.

Conversely, the first element of the *Wilkinson* exception, "that the insured had sufficient knowledge of the facts or circumstances indicating non-coverage," is only necessary to satisfy the elements of waiver. "Waiver involves intent or consent, express or implied, on the part of the [insurer], whereas an estoppel may arise where there is no intent to mislead." 46 C.J.S. INSURANCE § 786. Assurance even states in its motion that "[t]rue to the *'waiver' half* of the *Wilkinson* exception, Denison must prove that Assurance had 'sufficient knowledge'. . . ."[10] (emphasis added). Because estoppel does not require "the voluntary surrender of a known right," as does waiver, it follows that it is unnecessary to establish the insurer's knowledge for purposes of estoppel.[11] Therefore, the Court finds that it is unnecessary to address Assurance's contention that it lacked sufficient knowledge of the policy terms.

C.     *Evidence of Prejudice/Harm*

As stated above, the third element of the *Wilkinson* exception  requires proof that "the insured suffered some type of harm." *Kitty Hawk*, 964 F.2d at 481; *see also Nutmeg Ins. Co. v. Clear Lake City Water Authority*, 229 F. Supp. 2d 668 (S.D. Tex. 1992). This element is consistent

---

[10] Defendant's First Amended Motion for Summary Judgment, Dkt. #61, p.21.

[11] Similarly, in cases where only waiver is invoked, a showing of harm or prejudice is unnecessary. *See Murrah*, 40 S.W.2d at 235. Although a footnote in the *Williams* decision might be read to suggest that the *Wilkinson* exception articulates a single rule which merges waiver and estoppel and therefore requires that the elements of both be satisfied in every case, such an interpretation would depart dramatically from the holdings in earlier cases, such as *Murrah* and *Ferris*, upon which *Wilkinson* and *Pacific* Indemnity rely. *See Williams*, 791 S.W.2d at 553, f.2; *c.f.*, *Murrah*, 40 S.W.2d at 235; *Ferris*, 109 S.W.2d at 226.

with the requirement of prejudice under the doctrine of estoppel.  Assurance contends that "Denison suffered no harm from Assurance's withdrawal, because the attorney (Rick Fancher) exhibited no conflict of interest – indeed, he continued to represent Denison as before."[12]  Denison does not dispute that Fancher continued its defense without interruption, nor does Denison contend that Fancher exhibited any conflict of interest.  Denison does, however, argue in response that the harm that it suffered was the loss of the opportunity to resolve the underlying dispute prior to going through the litigation process.

In determining what constitutes a sufficient showing of harm under the third prong of the *Wilkinson* exception, a Texas Court of Civil Appeals held that "unless a conflict of interest or other harm is clear and unmistakable, we are inclined to the view that the insured must show how he was harmed."  *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 553 (Tex. Civ. App.— Dallas 1990); *see also Kitty Hawk*, 964 F.2d at 482 (holding that "unless the insured suffers a 'clear and unmistakable' harm from its insurer's defense, 'the insured must show how he was harmed.'").  Essentially, if it is clear that one of the potential dangers for which the *Wilkinson* exception was crafted is present, then the Court will presume prejudice.[13]  However, where there is no clear cut evidence of a conflict of interest or abandonment of some alternative course of action at the behest of counsel, the insured must demonstrate the particular harm that it suffered.

---

[12] *Id.* at 13.

[13] In *Kitty Hawk*, the Fifth Circuit explained:
> One of the policy girders buttressing this rule is the potential for conflicts – that is, the potential for an insurer representing an insured in a lawsuit to, fearful that the defense it provides may fail and result in a judgment against the insured and indemnity claim against the insurer, simultaneously prepare a non-coverage defense against the insured. *See Williams*, 791 S.W.2d at 551.  "Another related reason is the harm potentially or inherently suffered by an insured who lacks the right to completely control his defense." *Id.* at 552.

*Kitty Hawk*, 964 F.2d at 481 n.7.

Denison contends that "because Assurance did not properly handle the claim, Denison was deprived of the opportunity to take a different course of action to resolve the claim."[14] Because Denison fails to allege, and in fact rejects that it must allege, how it would have proceeded differently had Assurance properly handled the claim, the Court can only assume that Denison believes this case presents "clear and unmistakable" evidence that Assurance caused Denison to abandon some alternative course of settlement negotiations and/or litigation strategy. However, "the fact that [the insured] may have voluntarily relinquished rights associated with the control of its defense does not establish that it suffered any harm." *Kitty Hawk*, 964 F.2d at 483. Denison cannot simply speculate that it may have done *something* differently if Assurance had not assumed its defense. For the Court to presume prejudice, at the very least Denison must point to some decision made by counsel provided by Assurance that clearly and unmistakably deviated from the course of action Denison was taking before Assurance assumed the defense or was clearly and unmistakably unreasonable under the circumstances. Because Denison has presented no such evidence, it is required to demonstrate a specific harm that it suffered as a result of Assurance's assumption of its defense. The Court notes that neither Denison's original response nor its amended response to Assurance's motion attempt to present any actual harm suffered. Denison simply speculates that it lost the opportunity to do something differently. The Court will, however, liberally interpret Denison's references to the RCLA settlement negotiations with the Chileses to include Southern Vanguard's specific claim that Assurance made an unreasonably low RCLA settlement offer to the Chileses. Where, as here, "a party moves for summary judgment . . . asserting that no evidence exists as to one or more elements of a claim on which the nonmovant would have the burden of

---

[14] Denison's Amended Response and Memorandum in Opposition to Defendant's Amended Motion for Summary Judgment, Dkt. #62, p.11.

proof at trial, the burden is on the nonmovant to present enough evidence to raise a genuine issue

of material fact on each of the challenged elements." *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d

548, 553 (Tex. Civ. App.— Dallas, 2006); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254,

263 (5th Cir. 2002).[15]  Therefore, Denison and Southern Vanguard bear the burden of presenting a

genuine issue of material fact as to the element of harm under the *Wilkinson* exception.

Southern Vanguard contends that the settlement offer made by Assurance was unreasonably

low because it failed to account for any of the ancillary damages sought by the Chileses in their

RCLA demand.  Southern Vanguard explains, "[i]n addition to the repair of the defects, the Chileses

sought recovery for temporary housing costs, the reduction in the fair market value of the home,

engineering and consulting fees and attorneys' fees."[16]  Assurance's settlement offer of $5,818.50

to repair certain superstructural damage to the Chileses' home was, Southern Vanguard argues,

sufficiently deficient to raise a fact issue about whether Denison and/or Southern Vanguard would

---

[15] Southern Vanguard argues that Assurance bears the burden of disproving harm, and cites to the Fifth Circuit's opinion in *Pacific Indemnity* in which the court stated that it was convinced that the insurer's actions deprived the insured of the opportunity to present a more forceful defense and the court would not speculate as to precisely how an alternative defense might have been pursued. *Pacific Indem.*, 485 F.2d at 1176.  However, it is clear from the Fifth Circuit's opinion that it found that the facts at bar were ***clear and unmistakable*** evidence of the sort of prejudice contemplated by the *Wilkinson* exception.  The defense conducted by the insurer in *Pacific Indemnity* was obviously flawed and the timing of the insurer's withdrawal was on-its-face grossly prejudicial. Because the Fifth Circuit found such clear cut evidence of harm, it could presume prejudice, thereby relieving the plaintiff of its burden to present evidence of specific harm. The holding articulated in *Pacific Indemnity*, and relied upon by Southern Vanguard, is therefore inapplicable to the placement of burdens in this case.  Furthermore, Southern Vanguard's reading of the holding in *Pacific Indemnity* would suggest that Texas courts have adopted a rule presuming prejudice whenever an insurer has provided and subsequently withdrawn a defense.  Although some jurisdictions have adopted such a presumption, Texas courts have not. *Williams*, 791 S.W.2d at 552-553. Therefore, Southern Vanguard's reading of the holding in *Pacific Indemnity* is untenable.

[16] Intervenor, Southern Vanguard Insurance Company's Response to Defendant's First Amended Motion for Summary Judgment (Dkt. #63).

have made a materially different RCLA settlement offer.  The Court finds, however, that three crucial facts make Southern Vanguard's contention that Denison or it would have made a successful settlement offer so implausible that no reasonable jury could find that Denison was harmed.

First, Denison retained its own counsel, Mr. Duane Crocker, throughout the Chiles matter. Second, through Mr. Crocker, Denison made an independent RCLA settlement offer to the Chileses for the same amount offered by Assurance plus a litany of additional cosmetic repairs.  And third, the Chileses rejected both offers on the grounds that they disputed the underlying engineering report upon which both Assurance's and Denison's offers relied. The participation of Denison's own counsel, Mr. Crocker, during the settlement negotiations undermines Denison and Southern Vanguard's theory that Denison relinquished all control of the Chiles matter to Assurance.  Denison obviously felt free to make its own independent RCLA offer to the Chileses, which included additional terms not reflected in Assurance's offer.  Furthermore, Denison and its counsel, Mr. Crocker, independently adopted the theory of damages and the cost of repairs contained in Barron's engineering report.  Significantly, Denison's RCLA offer also did not address the Chileses' ancillary claims for alternative housing costs, consultant fees, etc..  The Chileses did not reject the offers made by Assurance or Denison on the grounds that those offers failed to account for the ancillary damages claimed. The Chileses rejected both offers "because the premise upon which [they were] based is incorrect, because the subsurface remedial work will not fix any real problem, and because the engineer's report and the test data reflect that there is a more serious problem with the foundation that [both] offer[s] [do] not address."[17]    Neither Denison nor Southern Vanguard contend that there was something wrong with Barron's engineering report, nor do they criticize

_____

[17] Defendant's First Amended Motion for Summary Judgment, Exhibit S, *letter from Robert Houston to Duane Crocker*.

Assurance for adopting the findings in that report. The entirety of the Chileses' three page rejection letter discusses the fallacies in the engineering report and explains their alternative theory of damages. Clearly, the Chileses would not have been satisfied by any offer based upon Barron's engineering report. Neither Denison nor Southern Vanguard has presented any evidence to the Court that would tend to suggest that either party would have made an RCLA settlement offer based on the Chileses' theory of damages to the home. Southern Vanguard's contention, which the Court again notes was not particularly averred in Denison's response, that Assurance harmed Denison and Southern Vanguard by making an unreasonably low RCLA offer that failed to include all ancillary damages contained in the Chileses' RCLA demand, cannot be the basis for any reasonable finding of harm or prejudice. Therefore, the Court finds that Denison and Southern Vanguard have failed to satisfy the elements of estoppel under the *Wilkinson* exception and, thus, Plaintiffs' claim for breach of contract under a theory of estoppel fails as a matter of law.

D.      *Article 21.21, Article 21.55, Negligent Misrepresentation, and DTPA Claims*

        Assurance further alleges that all of Denison's remaining claims fail due to its inability to prove harm or prejudice. The Court agrees. Denison's claim under the Prompt Payment of Claims Act, TEX. INS. CODE ART. 21.55 §6 fails because the statutory remedy is premised upon damages provable under a breach of contract claim. Because Denison cannot maintain an action for breach of contract, it follows that it has no remedy under Article 21.55. Furthermore, Denison's other claims under Article 21.21, the DTPA, and negligent misrepresentation require a showing of harm. Section 16(a) of Article 21.21 provides a cause of action only for those who have sustained "actual damages." TEX. INS. CODE ART. 21.21 § 16(a). Similarly, the DTPA requires a showing of detrimental reliance. V.T.C.A., BUS. & C. § 17.50(a). Finally, in *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442-43 (Tex.1991), the Texas Supreme Court adopted the independent

injury requirement of section 552B of the Restatement (Second) of Torts for claims of negligent misrepresentation under Texas law.  The Restatement mandates that "[t]he damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause . . . ." REST. (SECOND) OF TORTS § 552B (1977).  Because no reasonable jury could find that Denison suffered a pecuniary loss that was legally (i.e., proximately) caused by Assurance's initial assumption of Denison's defense in the Chiles litigation (the presumed representation), it follows that Denison cannot maintain an action for negligent misrepresentation.  Therefore, the Court finds that summary judgment is also appropriate as to Denison's and, derivatively, Southern Vanguard's claims under the Texas Insurance Code, the DTPA, and negligent misrepresentation.

### Conclusion

For the reasons stated above, the Court finds that Defendant Assurance Company of America's ("Assurance") First Amended Motion for Summary Judgment (Dkt. #61) should be GRANTED.

It is so ORDERED.

Signed this 26th day of May, 2006.

_John D. Rainey_
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE